IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE RESEARCH INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 25-683-JLH-EGT |
| ILLUMINA, INC., | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of The Research Institute at Nationwide Children's Hospital ("Plaintiff" or "NCH") to dismiss Illumina, Inc.'s ("Defendant" or "Illumina") equitable estoppel, implied license and patent misuse counterclaims and to strike certain related affirmative defenses. (D.I. 23). For the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

NCH is the assignee of U.S. Patent No. 9,552,458 ("the '458 Patent"), which is generally directed to systems and methods for determining and analyzing an individual's genomic sequence. (D.I. 1 ¶¶ 8, 13-15). The '458 Patent purports to improve on prior systems by splitting genetic sequence data into subsets, thus allowing for parallel processing that can reduce computation times and improve reproducibility. (*Id.* ¶¶ 30, 35).

Illumina develops and markets genetic sequencing systems. In 2018, Illumina acquired Edico Genome, Inc., the creator of a suite of genetic sequence analysis tools called DRAGEN Bio-IT ("DRAGEN"). (D.I. 1 ¶ 41; *see also* D.I. 32, Ex. A at 1). Later that year, Illumina was contacted by GenomeNext LLC ("GenomeNext") – an exclusive licensee of the '458 Patent – to discuss

Illumina potentially acquiring GenomeNext and its rights to the '458 Patent. (D.I. 21 at 13 ¶ 9 & 30 ¶ 30). Nothing seemingly came of this discussion. (*See id.* at 16-18 ¶¶ 13-14). Then, in September 2019, NCH gave a similar presentation to Illumina on the benefits of the '458 Patent. (*Id.* at 18-20 ¶¶ 14-15). This time, Illumina declined a license to the '458 Patent. (*Id.* at 22 ¶ 17).

In November 2023 – nearly four years after Illumina declined NCH's initial offer – NCH again reached out to Illumina, suggesting that Illumina "may wish to have its patent counsel examine" the '458 Patent in view of the DRAGEN system. (D.I. 21 at 22-23 ¶ 18). Illumina responded to NCH in February 2024, stating that it did not believe the '458 Patent was infringed or valid but invited NCH to further explain why Illumina's positions were wrong. (*See* D.I. 21 at 23-25 ¶¶ 19-20; *see also* D.I. 21, Ex. I). In May 2025, NCH finally responded to Illumina's assertions of invalidity and non-infringement, calling Illumina's claims "conclusory" and "without factual support." (D.I. 21 at 25 ¶ 21). NCH filed this case four days later, accusing Illumina of infringing the '458 Patent. (*See* D.I. 1).

On August 11, 2025, Illumina responded to NCH's complaint by asserting several declaratory judgment counterclaims and affirmative defenses. (*See* D.I. 11). On September 23, 2025 and in response to a motion to dismiss filed by NCH (D.I. 15), Illumina amended its answer and counterclaims (D.I. 21). On October 7, 2025, NCH filed the present motion, which seeks to dismiss Illumina's counterclaims of equitable estoppel, implied license and patent misuse, as well as to strike the related affirmative defenses and the defense of waiver. (*See* D.I. 23 & 24). The motion is fully briefed. (D.I. 32 & 35).

## II. <u>LEGAL STANDARDS</u>

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in

the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a party may move to strike from a pleading an insufficient defense or other matter that is "redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f). Motions to strike are generally disfavored and a court should not strike a defense unless the "insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Grp.*, 789 F.2d 181, 188 (3d Cir. 1986) (cleaned up); *see also Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988) (court should construe all facts in favor of non-movant and allow defense to proceed if "sufficient under law"). That being said, a court need not "accept affirmative defenses that are mere bare bones conclusory allegations" and "may strike such inadequately pleaded defenses." *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 2121395, at *2 (D. Del. May 15, 2019) (Bryson, J., sitting by designation).

## III. <u>DISCUSSION</u>

Based on the '458 Patent discussions with GenomeNext and NCH, Illumina asserts counterclaims and related affirmative defenses based on equitable estoppel, implied license and patent misuse. (D.I. 21 at 12-43 ¶¶ 6-60). Illumina also asserts a waiver defense based on the

licensing discussions. (*Id.* at 47-69 ¶¶ 19-60). NCH seeks dismissal of these counterclaims and to strike the four affirmative defenses. The Court addresses the counterclaims and affirmative defenses in turn.

**A. Equitable Estoppel Counterclaim**

Equitable estoppel is "an absolute bar" to recovery for patent infringement. *John Bean Techs. Corp. v. Morris & Assocs.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018). To prevail on a theory of equitable estoppel, a party must show that: "(1) the patentee engage[d] in misleading conduct that leads the accused infringer to reasonably infer that the patentee does not intend to assert its patent against the accused infringer; (2) the accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action." *Id.* NCH argues that Illumina fails to adequately plead the elements of misleading conduct and material prejudice. (D.I. 24 at 7-13). In particular, NCH insists that it did not threaten to sue Illumina and thus the ensuing silence cannot be misleading and, further, that Illumina's alleged prejudice is not legally cognizable. (*Id.*).

As to the first element, although "attempts to negotiate licenses . . . followed by a period of silence" do not alone establish misleading conduct, *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992), silence coupled with a threat of "immediate or vigorous enforcement" of patent rights followed by an unreasonably long period of inaction can be misleading. *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed Cir. 2010); *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995). Explicit threats of litigation are not required; a threat of litigation may be inferred from the course of conduct between the parties. *See Aspex*, 605 F.3d at 1311. Here, the parties disagree over whether Illumina's allegations can be construed to contain a threat of infringement litigation. Ultimately, the Court concludes that Illumina's allegations fail to plausibly show such a threat.

In relation to the 2018[1] and 2019 licensing talks, Illumina alleges "on information and belief" that it was threatened with litigation.[2] (D.I. 21 at 48 ¶ 24 & 54 ¶ 27). In Illumina's view, GenomeNext's statement that "[c]ommonly used methods for secondary analysis require a single BAM file for all sequencing reads . . . infring[e] on [GenomeNext's] method patent" constitutes a threat of suit for infringement. (D.I. 32 at 7 (quoting D.I. 21 at 15-16, 49-50)). To further support its claim of fear of suit, Illumina also cites various statements that GenomeNext or NCH made about purported industry-wide use of the '458 Patent and that GenomeNext allegedly identified the DRAGEN platform as using the '458 Patent. (D.I. 21 at 14-20 ¶¶ 10-14). But Illumina conflates a suggestion of infringement with a threat of suit for infringement. When followed by silence and inaction, the suggestion does not mislead, whereas the threat does. *See Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed Cir. 1990), *abrogated on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992); *Asics*, 974 F.2d at 1309. Based on the allegations here, the Court cannot plausibly infer that NCH (or GenomeNext) was threatening Illumina with a lawsuit during the 2018 or 2019 licensing discussions. And Illumina points to no other statements from that time period to plausibly show such a threat.

Without the 2018 or 2019 licensing discussions, only NCH's 2023 letter to Illumina remains as a basis for finding a threat of suit. But that letter also does not threaten enforcement of the '458 Patent. The strongest statement in that 2023 letter is NCH suggesting to Illumina that it "may wish to have its patent counsel examine [the '458 Patent] (particularly Claims 1, 33, 43, 48),

---

1 The 2018 discussion was between Illumina and GenomeNext. Illumina alleges "on information and belief" that GenomeNext was coordinating with NCH. (D.I. 21 at 47 ¶ 21). Even if it is proper to impute GenomeNext's activity to NCH (an issue the Court does not reach), Illumina's equitable estoppel claim still fails.

2 Setting aside whether it even makes sense for Illumina to plead "on information and belief" that it was threatened with suit – indeed, Illumina was the one purportedly threatened – this allegation is conclusory and entitled to no weight.

to determine whether a non-exclusive license is needed." (D.I. 21 at 22 ¶18; *see also* D.I. 21, Ex. G). But even viewing this fact in Illumina's favor – and against the backdrop of the prior negotiations – the statement only evidences a suggestion by NCH that Illumina's DRAGEN product might infringe the '458 Patent. It does not plausibly show (or permit the Court to reasonably infer) a threat of infringement litigation. *See Asics*, 974 F.2d at 1308.

There being no plausible threats of litigation in the licensing discussions themselves,[3] all that remains are allegations that amount to several offers to license by NCH followed by periods of silence. But that is not enough. *See Meyers*, 912 F.2d at 1464 (mere "suggestion of infringement coupled with an offer to license followed by silence" does not constitute misleading conduct).

Illumina also argues that NCH's knowledge of Illumina's purported infringement since 2018 constitutes misleading conduct, relying on *Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1380 (Fed. Cir. 2025). (D.I. 32 at 9). But the facts of *Fraunhofer* are different. There, the patentee had more than mere knowledge of the allegedly infringing conduct – the patentee was also the one responsible for creating the infringing features at the accused infringer's request. *Fraunhofer*, 138 F.4th at 1379-80. The patentee also had directed the accused infringer to acquire a license to the relevant patent, which the accused infringer did. *Id.* at 1376-77. But because there was a dispute over whether that license had been terminated, the accused infringer also sought to invoke equitable estoppel

---

[3] The only statements that could amount to threats of infringement are those in the May 2025 letter, where NCH stated that "Illumina has been aware of and practicing the '458 Patent claims without authorization for years now. The February 23 letter was not a good faith response, [sic] and indicates Illumina does not respect NCH's intellectual property rights." (D.I. 21 at 25 ¶ 21; D.I. 21, Ex. J at 2). And NCH filed this case only four days later. No claim of equitable estoppel could exist based on that four-day delay. *See Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987) (actionable delay in equitable estoppel context is "unreasonably long time"), *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).

based on the parties' working arrangement (and history). *Id.* at 1377-78. The Federal Circuit agreed that the patentee's years-long silence after the purported license expiration was misleading given its involvement in the accused product's creation. *Id.* at 1379-80. By contrast, Illumina does not allege here that NCH had any role in developing DRAGEN. *Fraunhofer* is thus inapplicable.

In sum, the conduct underlying Illumina's equitable estoppel counterclaim amounts at most to "a mere verbal charge of infringement . . . followed by silence." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1350 (Fed. Cir. 2014), *aff'd en banc*, 807 F.3d 1311 (Fed. Cir. 2015), *vacated in irrelevant part*, 580 U.S. 328 (2017).[4] But that is "not sufficient affirmative conduct" to reasonably mislead Illumina. *Id.* (cleaned up). And Illumina does not point to any other allegations that provide the necessary "something more" to make NCH's silence misleading. (*See* D.I. 32 at 5-10). The Court thus recommends that Illumina's equitable estoppel counterclaim be dismissed without prejudice.[5]

**B. Implied License Counterclaim**

Many different factual scenarios may result in an implied license. *See De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927). Yet the Federal Circuit has generally distilled and categorized the possibilities into a few distinct buckets: implied license by acquiescence, implied license by conduct, implied license by equitable estoppel (estoppel in pais) and implied license by legal estoppel. *Wang Lab'ys., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). Although there has been little development on what each of these theories entail, *see* 6 MOY'S WALKER ON PATENTS § 19.30 at 520 (4th ed. 2025), all implied license

---

4 "[T]he three-judge panel's treatment of equitable estoppel in *SCA Hygiene* remains good law." *Fraunhofer*, 138 F.4th at 1379 n.3.

5 Because the Court finds that Illumina failed to adequately plead misleading conduct, the Court does not reach NCH's arguments as to the material prejudice element.

theories require that there be a nexus between "the patentee's purported waiver and the infringing action," *Winbond Elecs. Corp. v. Int'l Trade Comm'n.*, 262 F.3d 1363, 1374 (Fed. Cir. 2001), and "an affirmative grant of consent" by the patentee, *Wang*, 103 F.3d at 1581.

NCH seeks to dismiss Illumina's counterclaim of implied license because there are no allegations to plausibly suggest that NCH affirmatively granted Illumina permission to practice the '458 Patent.[6] (D.I. 24 at 14-15; D.I. 35 at 5-6). In Illumina's view, NCH's prolonged silence and inaction ***is*** the affirmative grant. (*See* D.I. 32 at 17-18). Illumina claims that this is the "rare" circumstance where NCH affirmatively gave consent to practice the '458 Patent through its course of conduct or by acquiescing to Illumina's purported infringement. *Wang*, 103 F.3d at 1581; *see also Oracle Am., Inc. v. Google Inc.*, 2012 WL 1965778, at *1 (N.D. Cal. May 31, 2012). It is not.

In arguing that NCH gave Illumina consent to practice the patent, Illumina relies almost exclusively on *Mueller v. Mueller*, 95 F. 155 (3d Cir. 1899). There, the asserted patent covered a method for coloring glassware. *Id.* The patentee then founded a company that only colored glass using the patented method. *Id.* Even though there was never an express license granted to the company, the patentee never objected to the company's use of the patent, and the company continued to manufacture glass using that patented method even after the patentee's death and the company's subsequent change in ownership. *Id.* at 156, 158. Ultimately, the patentee's administratrix sued the company for infringement nearly two years after the patentee's death. *Id.* at 156. In determining that there was an implied license that precluded recovery for infringement, the Third Circuit found that there was an implied grant of consent through the patentee's

---

6 Although it is not entirely clear what implied license theory is being asserted, all theories require an affirmative grant of consent. *See IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1360 (S.D. Fla. 2010). Therefore, the Court's conclusion applies to all.

involvement with the company and the prolonged silence and inaction towards the infringement after his death. *See id.* at 156-58.[7]

The facts here are fundamentally different than in *Mueller*. At best, the Court can only plausibly infer that NCH thrice attempted (and failed) to extract license payments from Illumina based on the DRAGEN platform and that those failed attempts were followed by periods of silence. (*See* D.I. 21 at 47-57 ¶¶ 21-31). That does not plausibly show that NCH gave an ***affirmative*** grant of consent. *Wang*, 103 F.3d at 1581. Although sometimes sufficient to plead equitable estoppel, licensing attempts followed by silence do not evidence an affirmative grant of consent as required for an implied license. *See IMX*, 748 F. Supp. 2d at 1360 ("Plaintiff's dismissal of a previous action for patent infringement against Defendant E–Loan and its intervening silence is not an affirmative grant of consent or permission. Defendant has alleged misleading conduct, which is enough for a defense of equitable estoppel but not for a defense based on an implied license."). Because Illumina's factual allegations do not plausibly support an implied license, the Court recommends that the implied-license counterclaim be dismissed without prejudice.

### C. Patent Misuse Counterclaim

Generally, patent misuse requires an accused infringer to show that the patentee has "impermissibly broadened the 'physical or temporal scope' of the patent grant with

---

7 The *Mueller* court cited *Godden v. Kimmel*, 99 U.S. 201 (1878), and *Lansdale v. Smith*, 106 U.S. 391 (1882), in reaching its ultimate conclusion that the case should be dismissed. *See Mueller*, 95 F. at 159. But *Godden* and *Lansdale* are cases concerning laches – not equitable estoppel or implied license. *See Godden*, 99 U.S. at 210 ("For fourteen years the complainants slept upon their rights, and there is not a single allegation in the bill nor a particle of proof introduced in their behalf to excuse their manifest laches in not seeking an account until all the parties in interest have departed this life."); *Lansdale*, 106 U.S. at 394 ("The case is plainly one of gross laches."). And laches is no longer a defense to patent infringement. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 346 (2017). *Mueller* is thus distinguishable on this basis as well.

anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (quoting *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971)). "Patent misuse will not be found when there is no connection between the patent right and the misconduct in question or no use of the patent." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1331 (Fed. Cir. 2010) (en banc) (cleaned up). Here, Illumina asserts a theory of patent misuse based solely on bad faith enforcement of the '458 Patent. (*See* D.I. 32 at 12-15). NCH argues that this theory is not legally cognizable. (*See* D.I. 24 at 16-17). The Court agrees with NCH.

According to NCH, the language of 35 U.S.C. § 271(d)(3) is clear: "all efforts to enforce patent rights" – even infringement suits brought in bad faith – are excluded from being patent misuse. (D.I. 35 at 8; *see also* D.I. 24 at 16). NCH claims that the Federal Circuit confirmed this proposed reading of § 271(d)(3) in *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). Illumina responds that "enforce" as used in § 271(d)(3) includes a presumption that the enforcement is based on a good-faith belief that the patent is infringed. (D.I. 32 at 14). Illumina claims the Federal Circuit has sanctioned patent misuse claims based on bad-faith enforcement as evidenced by statements in *Glaverbel Soc'y Anonyme v. Northlake Mktg & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995).

As an initial matter, courts are divided on whether bad faith patent enforcement can constitute patent misuse. *Contrast Wyeth v. Impax Lab'ys, Inc.*, C.A. No. 06-222-JJF, 2006 WL 8460077, at *1 (D. Del. 2006) (permitting a patent misuse theory based on bad faith to proceed), *and Qfix Sys., LLC v. Klarity Med. Prods., LLC*, C.A. No. 23-77 (CJB), 2024 WL 5692211 (D. Del. Sept. 25, 2024), *and Cadence Pharm., Inc. v. Paddock Lab'ys, Inc.*, C.A. No. 11-733-LPS, 2012 WL 4565013, at *2 (D. Del. Oct. 1, 2012), *with Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, 2020 WL 1331919, at *8-10 (S.D.N.Y. Mar. 23, 2020) (dismissing a patent misuse

claim based on bad faith patent enforcement), *and Duke Univ. v. Akorn, Inc.*, 2019 WL 4410284 (D.N.J. Sept. 16, 2019), *and Pace Int'l, LLC v. Indus. Ventilation, Inc.*, 2009 WL 2460999, at *1 (W.D. Wash. Aug. 6, 2009), *and Bridgestone Ams. Tire Operations., LLC v. Speedways Tyres Ltd.*, 2023 WL 2574576, at *3-4 (N.D. Tex. Mar. 20, 2023). This Court ultimately agrees that "bad faith" enforcement of patents is not covered by the doctrine of patent misuse.[8]

In *Glaverbel*, the Federal Circuit explained that "[t]he bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade." 45 F.3d at 1558. Illumina contends that this statement permits patent misuse theories based on bad faith enforcement of patent rights and that, because the Federal Circuit's subsequent statement in *C.R. Bard* did not explicitly overrule *Glaverbel*, bad faith enforcement remains a viable theory of patent misuse. (D.I. 32 at 13-15 (citing *Qfix Sys.*, 2024 WL 5692211)).

But the Federal Circuit's statement in *Glaverbel* is dicta. The discussion relates only to Sherman Act claims, not the defense of patent misuse. *See Glaverbel*, 45 F.3d at 1558-59. In fact, neither party discussed the doctrine of patent misuse in their appellate briefs at all, focusing exclusively on the asserted antitrust claims. *See* Brief of Appellant at 13-21, *Glaverbel*, 45 F.3d 1550 (Nos. 92-1316, 92-1317), 1992 WL 12013751; Brief of Appellee at 20-27, *Glaverbel*, 45 F.3d 1550 (Nos. 92-1316, 92-1317), 1992 WL 12013752; Reply Brief of Appellant at 11-20, *Glaverbel*, 45 F.3d 1550 (Nos. 92-1316, 92-1317), 1992 WL 12013754. Moreover, the *Glaverbel*

---

8 Although the Court need not decide whether § 271(d)(3) alone precludes a finding of patent misuse in these circumstances, it appears that this provision was enacted primarily to ensure that contributory infringement was not considered patent misuse. *See Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 201, 207-13 (1980); *see also* P.J. FEDERICO, COMMENTARY ON THE NEW PATENT ACT (1954), *reprinted in* 75 J. PAT. & TRADEMARK OFF. SOC'Y 161, 214 (1993).

court's reasoning is confined to cases involving sham litigation and the *Noerr-Pennington* doctrine. A party asserting a sham litigation antitrust claim must overcome the immunity afforded by the *Noerr-Pennington* doctrine by showing, *inter alia*, that the litigation was brought in bad faith. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 60-61 (1993). Because *Glaverbel* was concerned with an antitrust sham litigation claim, the court's discussion of bad faith was cabined to that context – *i.e.*, not patent misuse more broadly. *See L-3 Comm'cns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2013 WL 1231875, at *5 n.3 (D. Colo. Mar. 27, 2013) (reaching the same conclusion). And although patent misuse was mentioned by name, the *Glaverbel* court did not actually analyze the contours of the doctrine.

Because the statement in *Glaverbel* is dicta, the Federal Circuit's decision in *C.R. Bard* controls here.[9] Indeed, the instruction on patent misuse submitted to the jury in *C.R. Bard* is effectively the type of patent misuse claim that Illumina seeks to assert here:

> [A] patent is unenforceable for misuse if the patent owner attempts to exclude products from the marketplace which do not infringe the claims of the patent and the patent owner has actual knowledge that those products do not infringe any claim of the patents. ***The patent is also unenforceable for misuse when a patent owner attempts to use the patent to exclude competitors from their marketplace knowing that the patent was invalid or unenforceable***.
>
> A patent will not be rendered unenforceable for misuse if the patent owner has enforced the patent in the good faith belief that the accused products infringed the patent's claims.
>
> You may consider all aspects of the conduct of the patent owner in deciding whether a patent has been misused. In order to find misuse, you may not determine that – you need not determine that an antitrust violation has been proved. ***Even if an antitrust violation***

[9] The statements about patent misuse in *Glaverbel* "go beyond the case" that was before the *Glaverbel* court. *Cohens v. Virginia*, 6 Wheat. 264, 399-400 (1821). And given that the *C.R Bard* decision directly dealt with the theory of patent misuse alleged here, the Court does not find the *Glaverbel* dicta persuasive. But as Judge Burke recently noted, this issue is "surely not free from doubt." *Qfix Sys.*, 2024 WL 5692211.

> ***has not been proven, you may still find that the patents have been misused if you conclude that the patents have been used wrongfully.***

157 F.3d at 1373 (emphases added). The *C.R. Bard* court summarized this instruction as "focused primarily on the charge that Bard was attempting to enforce the patents against goods ***known*** not to be infringing." *Id.* at 1373 (emphasis added). In reversing judgment on the verdict, the court explained that the "conduct to which the jury instruction on misuse generally refers . . . is activity protected under *Noerr* and *California Motor*, and is not subject to collateral attack as a new ground of 'misuse.'" *Id.* This Court understands *C.R. Bard* to stand for the proposition that actions giving rise to cognizable antitrust claims as sham litigation are not separately cognizable under the doctrine of patent misuse. *Accord Signify N. Am. Corp.*, 2020 WL 1331919, at *8-10.

With that understanding in mind, Illumina's patent misuse claim should be dismissed. The claim is based on Illumina's theory that NCH "was aware that the Illumina DRAGEN platform does not infringe prior to filing this suit" (D.I. 21 at 36 ¶ 47; *see also id.* at 39 ¶ 50), which amounts to a "bad faith, knowingly baseless claim of infringement" (*id.* at 43 ¶ 60). Under *C.R. Bard*, that cannot be patent misuse. Accordingly, the Court recommends that Illumina's counterclaim for patent misuse on this theory be dismissed with prejudice.

**D. Affirmative Defenses**

NCH seeks to strike Illumina's affirmative defenses of equitable estoppel, implied license, patent misuse and waiver based on insufficient facts alleged. (*See* D.I. 24 at 13-14; D.I. 35 at 10). Although not yet decided by the Third Circuit, the majority of courts in this circuit have found that the plausibility standard of *Twombly* and *Iqbal* does not apply to affirmative defenses. *See Dilmore v. Alion Sci. & Tech. Corp.*, 2011 WL 2690367, at *5 n.5 (W.D. Pa. July 11, 2011) (collecting cases in the Third Circuit finding that *Twombly* and *Iqbal* do not apply to affirmative defenses); *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 218 (3d Cir. 2017) ("[A]n affirmative defense

generally 'need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of [Federal Rule of Civil Procedure] 8 by its bare assertion.'" (quoting *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997) (cleaned up)); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 383-84 (D. Del. 2012). This Court will follow the same approach.

As an initial matter, because Illumina's patent misuse defense is based on the same theory as its counterclaim and because that theory is not cognizable, Illumina's patent misuse defense should be stricken as legally insufficient. (*See* D.I. 21 at 66 ¶ 50 (incorporating allegations from affirmative defense into counterclaim)). Illumina's remaining defenses of equitable estoppel, implied license and waiver are all cognizable defenses to a claim of patent infringement. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019, 1022 (Fed. Cir. 2008) (waiver and equitable estoppel); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336, 1339 (Fed. Cir. 2006) (implied license). Therefore, striking is only appropriate if Illumina failed to provide fair notice of the circumstances supporting each defense or if the defenses are otherwise legally insufficient. *Sun Microsystems, Inc. v. Versata Enter., Inc.*, 630 F. Supp. 2d 395, 407-09 (D. Del. 2009).

None of the remaining defenses warrant striking. For equitable estoppel and implied license, Illumina uses the same factual allegations for its counterclaims and affirmative defenses. (*See* D.I. 21 at 13-28 ¶¶ 6-25 & 31-43 ¶¶ 25-60). Although the Court recommends dismissing the related counterclaims for failing to meet the plausibility standard of *Iqbal* and *Twombly*, the equitable estoppel and implied license theories are not conclusory or otherwise clearly legally insufficient. *Cf. Golo, LLC v. Amazon.com, Inc.*, C.A. No. 23-1200 (MN), 2025 WL 1592056, at *5 (D. Del. June 5, 2025) (finding equitable defense of laches sufficient given the "fact-based" nature of the defense because it provided sufficient notice). Illumina provides fair notice of the theories giving rise to these defenses and NCH's motion to strike should be denied.

For Illumina's waiver defense, NCH does not adequately explain why the defense should be stricken. Although NCH relies on *IT Casino Solutions LLC v. Transient Path, LLC*, 2022 WL 4913526, at *6-7 (N.D. Cal. Oct. 3, 2022), and *Tigo Energy Inc v. SMA Solar Tech. Am. LLC*, C.A. No. 22-915-GBW, 2024 WL 964203, at *4, *9 (D. Del. Mar. 5, 2024), in support of striking, the Court finds neither persuasive. (D.I. 24 at 15; D.I. 35 at 6). The *IT Casino* court did not apply the "fair notice" standard used by most courts in the Third Circuit when reviewing affirmative defenses and instead applied the higher *Twombly/Iqbal* plausibility standard. *See IT Casino*, 2022 WL 4913526, at *3. And the *Tigo* court struck the waiver affirmative defense (and dismissed the associated counterclaim) because the asserted waiver theory sounded in fraud – and failed to meet Rule 9(b)'s heightened pleading standard. *Tigo*, 2024 WL 964203, at *4. But NCH has not argued that Rule 9(b) applies to the waiver defense asserted here.

NCH also argues that Illumina's theory of "implied waiver" is not legally cognizable because there was no duty to speak. (D.I. 35 at 6-7). Illumina insists that there was, in fact, a duty to speak. (D.I. 32 at 15-16 (citing *Qualcomm*, 584 F.3d at 1020-21)). Motions to strike are not the proper vehicle to litigate "disputed and substantial questions of law." *Symbol Techs. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 n.1 (quoting *Salcer v. Envicon Equities, Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)). The Court sees no reason to deviate from that general principle here.

Based on the limited (and unhelpful) briefing on the waiver defense and because motions to strike are generally disfavored, the Court finds that NCH has failed to show that striking is warranted. *See Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020). NCH's motion to strike Illumina's waiver defense should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that NCH's motion to dismiss Illumina's counterclaims of equitable estoppel, implied license and patent misuse and to strike the related affirmative defenses (D.I. 23) be GRANTED-IN-PART and DENIED-IN-PART.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: September 18, 2026

UNITED STATES MAGISTRATE JUDGE